IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-101-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ALEXIS NICOLE WILKINS,

      Defendant.
_____

## GOVERNMENT'S SENTENCING STATEMENT
_____

The United States of America, by and through United States Attorney Cole Finegan and Assistant United States Attorneys Peter McNeilly and Alyssa Mance, respectfully recommends a sentence of 240 months imprisonment and five years of supervised release. This recommended sentence is sufficient, but not greater than necessary, to accomplish the sentencing goals set forth in 18 U.S.C. § 3553(a)(2).

## I. <u>APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS</u>

### (a) The Nature and Circumstances of the Offense

On December 2, 2021, the defendant met two juvenile girls in the parking lot of the Citadel Mall in Colorado Springs and sold them a blue pill which contained fentanyl.



The girls smashed the pill in the mall's food court bathroom and snorted some of it. They kept the remainder of the pill in a folded dollar bill and took it to school with them the next morning. They met up with Juvenile #1 and went to a bathroom, where Juvenile #1 snorted some of the pill. The girls eventually separated and went to their respective classes.

This is where Juvenile #1 laid her head down in class as she suffered a fentanyl overdose which would ultimately take her life:



At the end of class, Juvenile #1 was foaming at the mouth and unresponsive. A teacher called for Emergency Medical Services. Emergency Medical Services and members of the Colorado Springs Police Department came to the high school and attempted to save Juvenile #1's life. Juvenile #1 was transported to a local hospital, where she was declared deceased. The El Paso County Coroner determined Juvenile #1's cause of death was "fentanyl intoxication."

The defendant's deal with the two juveniles was part of a repetitive business of dealing fentanyl pills to make money. A search of the defendant's Facebook account revealed a significant number of private messages with individuals discussing the distribution of illegal drugs. For example, the following conversation occurred on July 6, 2021, with a Facebook user whose vanity name can be reduced to the initials R.S.:

| Date | From | To | Message |
|------|------|-----|---------|
| 07/06/2021 | Wilkins | R.S. | My fault I had my kids today how much you can lower it if I buy 4 k worth<br><br>I got a bomb plug for 5.50 but I want stronger ones |
| 07/06/2021 | R.S. | Wilkins | if you trying to spend that I can put you in the building might even bring it to you<br><br>My sis got the golden trail all of them you bring that okay now I said s*** I'll put you with a fire deal you dig |
| 07/06/2021 | Wilkins | R.S. | I get 700 for 3,850 every reeup n na I'ma need that one then you come to me tom I have it ready how many we talking<br>I got 300 left to go I reeup every week if it's great |

Some things worth noting about this conversation are: (1) the defendant's three young kids were an impediment to her fentanyl trafficking business; (2) she was purchasing approximately $4,000 worth of fentanyl pills at a time; (3) she received 700

pills every time she resupplied; (4) she was resupplying on a weekly basis, when business was good; and (5) she was a sophisticated fentanyl dealer who was capable of communicating with other sophisticated fentanyl dealers. The defendant used unique terminology related to fentanyl dealing and her prospective new source of supply did as well. The "golden trail" is a way fentanyl dealers and users evaluate the quality of fentanyl pills. If a fentanyl pill leaves a golden trail as it slides down a piece of foil when subjected to high heat, it is believed to be of higher quality than one which does not leave a golden trail.

On November 29, 2021, the defendant had the following conversation with a Facebook user whose vanity name can be reduced to the initials J.C.:

| Date | From | To | Message |
|------|------|-----|---------|
| 11/29/2021 | J.C. | Wilkins | Who needs real blues? |
| 11/29/2021 | Wilkins | J.C. | Oh I wouldn't know I sell 30s so asking me is like giving away my people lol |
| 11/29/2021 | J.C. | Wilkins | I feel it I'm just low on bread I didn't know if you still sold them or not my bad ain't trying to step on toes |
| 11/29/2021 | Wilkins | J.C. | Oh your fine I don't have the real ones tho but better luck in the group chats yanno |
| 11/29/2021 | J.C. | Wilkins | Do you have 30s? How much for 20 |
| 11/29/2021 | Wilkins | J.C. | 13 a p |

During this message, it appears J.C. was attempting to buy or sell actual 30mg oxycodone pills, or "real blues." The defendant replied she sells "30s," and told J.C., "I don't have the real ones." This indicates the defendant knew the pills she was selling were not made by a pharmaceutical company. The date of the conversation is important because the defendant sold the pill which caused Juvenile #1's death just three days later.

The Facebook messages between the defendant and Juvenile #2, which arranged the deal on December 2, 2021, were as follows:

| Date | From | To | Message |
|------|------|-----|---------|
| 12/2/21 | Juvenile #2 | Wilkins | I got 16 I might get the rest buh if I can't I'mma end up being more tm n can pay u that extra 4 |
| 12/2/21 | Wilkins | Juvenile #2 | You able to get to me |
| 12/2/21 | Juvenile #2 | Wilkins | I'm at the mall I'm riding the bus home |
| 12/2/21 | Wilkins | Juvenile #2 | Stay at mall |
| 12/2/21 | Juvenile #2 | Wilkins | U think u can come here |
| 12/2/21 | Juvenile #2 | Wilkins | Oki Bhet |
| 12/2/21 | Wilkins | Juvenile #2 | Be there in 5 |
| 12/2/21 | Juvenile #2 | Wilkins | Bhet |
| 12/2/21 | Juvenile #2 | Wilkins | I got 16 I'mma get more tm to |
| 12/2/21 | Wilkins | Juvenile #2 | Wya |
| 12/2/21 | Juvenile #2 | Wilkins | In front |
| 12/2/21 | Wilkins | Juvenile #2 | Of what ? |
| 12/2/21 | Juvenile #2 | Wilkins | Food court |
| 12/2/21 | Wilkins | Juvenile #2 | Ok go to back |
| 12/2/21 | Juvenile #2 | Wilkins | By where |
| 12/2/21 | Wilkins | Juvenile #2 | Same place |
| 12/2/21 | Wilkins | Juvenile #2 | I'm here |

During a forensic interview, Juvenile #2 stated she sent the defendant a message, after Juvenile #1 died, informing the defendant the pill the defendant sold caused her friend to die. The information from the defendant's Facebook account shows Juvenile #2 sent six messages on December 2 and 3, 2021, which Juvenile #2 later "unsent" on December 4, 2021. Because Juvenile #2 unsent the messages, the content of those messages was no longer available in the information associated with the defendant's Facebook account. However, the fact there were messages which Juvenile #2 unsent tends to corroborate Juvenile #2's assertion that she did indeed tell the defendant about Juvenile #1's death. And, as will be discussed below, the defendant

actually admitted to police that Juvenile #2 told the defendant one of Juvenile #2's friends died from using the drug the defendant sold.

Shockingly, information from the defendant's Facebook account shows the defendant and Juvenile #2 resumed communications and exchanged messages on December 5, 2021; December 26, 2021; December 27, 2021; January 6, 2021; and January 14, 2021, about whether the defendant would sell Juvenile #2 more pills. None of the messages appear to have resulted in a deal, however, that wasn't because the defendant stopped selling pills. Instead, the defendant repeatedly told Juvenile #2 she would not drive to the locations Juvenile #2 proposed because the deals Juvenile #2 proposed were simply too small to be worth it to the defendant.

For example, this was the conversation between the defendant and Juvenile #2 on December 5, 2021 (two days after Juvenile #1's death):

| Date | From | To | Message |
| --- | --- | --- | --- |
| 12/5/21 | Juvenile #2 | Wilkins | Let me get a perk |
| 12/5/21 | Wilkins | Juvenile #2 | Go to mall |
| 12/5/21 | Juvenile #2 | Wilkins | Come to meadows park |
| 12/5/21 | Juvenile #2 | Wilkins | Ion got a ride to the mall |
| 12/5/21 | Juvenile #2 | Wilkins | *[Juvenile #2 sent a live location]* |
| 12/5/21 | Wilkins | Juvenile #2 | Not for one love |
| 12/5/21 | Juvenile #2 | Wilkins | 2 |
| 12/5/21 | Wilkins | Juvenile #2 | I'm a little busy rn |
| 12/5/21 | Juvenile #2 | Wilkins | I got 40 |
| 12/5/21 | Wilkins | Juvenile #2 | I'll se how far it is in a second |
| 12/5/21 | Juvenile #2 | Wilkins | Bhet |
| 12/5/21 | Juvenile #2 | Wilkins | N I'll give u that extra |
| 12/5/21 | Juvenile #2 | Wilkins | I might catch the buss to the mall |
| 12/5/21 | Wilkins | Juvenile #2 | Ok |
| 12/5/21 | Juvenile #2 | Wilkins | I'll let u know when I get there |
| 12/5/21 | Juvenile #2 | Wilkins | Can u just come here n I'll give u gas money to |

| 12/5/21 | Juvenile #2 | Wilkins | Can u come before I go to my crib out east I ain't trying to make u drive that far |
| 12/5/21 | Wilkins | Juvenile #2 | I'm not leaving rn |
| 12/5/21 | Wilkins | Juvenile #2 | I'm a little busy |
| 12/5/21 | Juvenile #2 | Wilkins | My ride otw soon can u come out to my house den since u busy |
| 12/5/21 | Wilkins | Juvenile #2 | Get a ride to mall and I'm not leaving no time soon right. |
| 12/5/21 | Wilkins | Juvenile #2 | Now |
| 12/5/21 | Juvenile #2 | Wilkins | I can't bus just let n my ride otw |

On Christmas Eve, the defendant's reason for not doing a deal with Juvenile #2 was similar:

| Date | From | To | Message |
| --- | --- | --- | --- |
| 12/24/21 | Juvenile #2 | Wilkins | Aye |
| 12/24/21 | Juvenile #2 | Wilkins | U mobile |
| 12/24/21 | Wilkins | Juvenile #2 | Not atm |
| 12/24/21 | Juvenile #2 | Wilkins | When are u gonna be mobile |
| 12/24/21 | Wilkins | Juvenile #2 | Idk if I will be moving around today it depends honestly on how many I'm not moving for one |

Then, on January 14, 2022, the exchange went as follows:

| Date | From | To | Message |
| --- | --- | --- | --- |
| 1/14/22 | Juvenile #2 | Wilkins | U mobile |
| 1/14/22 | Wilkens | Juvenile #2 | I don't move for one anymore |

On March 15, 2022, the Federal Bureau of Investigation and Colorado Springs Police Department executed a federal search warrant on the defendant's apartment in Colorado Springs. Officers located and seized over 100 blue pills marked with "M" and "30," which contained fentanyl. Some of the pills were recovered from the defendant's master bedroom and some were recovered from inside her silver Jeep Grand

Cherokee. Investigators also recovered $7,679 of U.S. currency in the defendant's apartment.

 

Officers also searched the defendant's iPhone which was in her possession when they arrested her on March 15, 2022. The search yielded more messages which show the defendant used text messages, in addition to Facebook messages, to acquire and distribute fentanyl pills. In fact, the defendant's iPhone had at least three applications installed for the purposes of text communication. These applications would allow the user of the phone to communicate with others while using telephone numbers other than the one the defendant's service provider assigned to her phone. An agent reviewing the contents of the defendant's iPhone conducted a search for the word "blues"—a common street name for fentanyl pills. The search returned approximately 18,013 pages with dozens of unique phone numbers discussing the sale of "blues." A review of the messages revealed the defendant was engaged in the distribution of "blues" as early as June 2020, and as recently as March 13, 2022.

Between September 2021 and December 2021, the defendant communicated with telephone number (720) 704-7304 via the Text Free Ultra application on the defendant's phone. Based on the context of the communications, the user of (720) 704-7304 appears to have been one of the defendant's suppliers for fentanyl pills. Their communications included the following text messages:

| Date | From | To | Message |
|---|---|---|---|
| 9/14/21 | Wilkins | 7304 | Hey girl ima just reuup what someone else this time just lmk when you have it again |
| 9/14/21 | 7304 | Wilkins | I'll do em for 550 |
| 9/14/21 | Wilkins | 7304 | When |
| 9/14/21 | 7304 | Wilkins | Rn |
| 9/14/21 | Wilkins | 7304 | How many you got |
| 9/14/21 | 7304 | Wilkins | 400 |
| 9/14/21 | Wilkins | 7304 | Wya ?   Are these the same ones you was talking about |
| 9/14/21 | 7304 | Wilkins | Yea there the same ones |
| 9/14/21 | Wilkins | 7304 | Can you bring foil out.<br><br>I wanna see how they burn |

This conversation appears to involve the defendant purchasing 400 fentanyl pills for $5.50 each, for a total of $2,200. The conversation demonstrates the defendant was familiar with the varying quality of fentanyl pills and wanted to ensure she was receiving high quality ones by having the seller bring foil to show the defendant how they burn. The defendant's iPhone also had at least one photo which appears to have been taken to document the trails left by several fentanyl pills:



In a post-arrest interview on March 15, 2022, the defendant admitted she was unemployed and had been selling fentanyl pills for approximately six months.[1] She claimed she was unsure if all her pills contained fentanyl, a mix of Percocet and fentanyl, or just Percocet. She said she had just purchased pills from her supplier the day before her arrest for approximately $2,000. She also said she distributed pills as recently as the day before her arrest. The defendant admitted she meets some of her customers at the Citadel Mall, behind the food court. The defendant admitted to selling pills to Juvenile #2. The defendant also admitted Juvenile #2 told the defendant one of Juvenile #2's friends died from using the drug the defendant sold.

---

[1] The Facebook records establish the defendant had been selling fentanyl pills since at least May 2021.

### (b) The History and Characteristics of the Defendant

The defendant did not have any legitimate employment at the time of her arrest or for several months preceding her arrest. Her only documented income was $300 in food stamps per month. She made her living off selling fentanyl pills.

On the defendant's iPhone, agents found at least 11 videos of her with large amounts of cash. The following images were captured from three of these videos:

 



The defendant's iPhone also included photos the defendant had apparently taken to emphasize the amount of cash she had on hand. Here is one example:



The defendant dealt fentanyl pills, including to juveniles, because she wanted money. Juvenile #2 and Juvenile #3 look like juveniles. They do not look like adult women.

The defendant was pending trial for Child Abuse-Negligence-No Injury in El Paso County Court Case Number 2021M2941 when she sold the fentanyl to the two juvenile girls which resulted in Juvenile #1's death. The defendant was serving the term of probation in that case when police searched her residence and seized several hundred fentanyl pills and over $7,000 in cash. The defendant has 14 instances of failure to appear in her criminal record. She has at least three instances where probation or a deferred sentence was revoked due to her non-compliance. She has 10 adult misdemeanor convictions.

At the time of her arrest, the defendant lived with her three children, ages 8, 4, and 2. Within the apartment, she had fentanyl pills in multiple places where the children could have easily accessed them. Investigators found several bags of fentanyl pills inside a colorful backpack which was sitting on the floor in the master bedroom.







Inside a pill bottle, which was sitting out in the open on the dresser in the master

bedroom, they found more fentanyl pills.





Prior to executing the search warrant, law enforcement officers watched the defendant drive her three small children to school or some type of childcare in her Jeep Grand Cherokee. A search of that Jeep Grand Cherokee a little later in the morning yielded more baggies of fentanyl pills.



Over the government's objection, the defendant was released on bond in this case. While on bond and residing at a residential reentry center, she was found to be continuing to facilitate drug trafficking activity. *See* ECF No. 38. Her bond was ultimately revoked, and she was detained pending sentencing.

**(c) The Need for the Sentence to Achieve the Aims of 18 U.S.C. § 3553(a)(2)**

A sentence of 240 months imprisonment and five years of supervised release will reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant.

The defendant's crime is very serious. The defendant knowingly dealt one of the deadliest illicit drugs in history, and she did it solely for financial gain. Her sizable client base included high school girls. And her conduct had a catastrophic result: she killed a juvenile girl. A sentence of 240 months imprisonment and five years of supervised release will stand as a deterrent to further crimes by the defendant and serve to protect the public from further crimes by her. A sentence of 240 months imprisonment for this offense will also serve to deter others like the defendant who may think the risk is worth the reward. A sentence of 240 months communicates it is not worth distributing even a very small amount of fentanyl.

**(d) The Advisory Sentencing Range Provided by the Sentencing Guidelines**

The advisory sentencing guideline range, according to the U.S. Probation Office is 240 - 262 months. The government's recommended sentence is at the bottom of the advisory guideline range.

## III. <u>CONCLUSION</u>

The recommended sentence of 240 months imprisonment and five years of supervised release is sufficient, but not greater than necessary, to accomplish the

sentencing goals set forth in 18 U.S.C. § 3553. The sentence is appropriate based on this defendant's history and the nature of her offenses.

Respectfully submitted this 27th day of April, 2023,

COLE FINEGAN
United States Attorney

By:  *s/Peter McNeilly*
PETER MCNEILLY
ALYSSA MANCE
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0403
E-mail: peter.mcneilly@usdoj.gov
Attorneys for the United States

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2023, I electronically filed the foregoing with the Clerk of Court Using the CM/ECF system which will send notification of such filing to all email addresses of record.

By: *s/Peter McNeilly*
PETER MCNEILLY
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0403
E-mail: peter.mcneilly@usdoj.gov